UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SHERI R. MCLAURIN                                              PLAINTIFF

VS.                                       CIVIL ACTION NO. 3:08CV762TSL-JCS

JON FUSCO, INDIVIDUALLY AND                                   DEFENDANTS
D/B/A DMJ, INC. AND JENNY CRAIG

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Jenny Craig, Inc. (Jenny Craig) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Sheri R. McLaurin has responded in opposition to the motion, and the court, having considered the parties' memoranda and submissions, concludes that the motion should be granted.[1]

Beginning in 2001, defendant Jon Fusco d/b/a DMJ, Inc. (DMJ) operated a Jenny Craig franchise in Ridgeland, Mississippi, known

---

[1] Jenny Craig initially moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, but presented evidence outside the pleadings in support of the motion. Plaintiff responded with evidence of her own, and in its rebuttal, Jenny Craig submitted additional evidence. The court notified plaintiff that it would consider the parties' evidence and thus treat Jenny Craig's motion as a motion for summary judgment. See Fed. R. Civ. Proc. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Plaintiff was given an opportunity to provide a further response in light of the court's decision to convert the motion, but plaintiff did not file any additional response or evidentiary materials within the time allowed for doing so. The briefing is thus now complete on the converted motion for summary judgment.

between the parties as Centre #8155 (the Centre). According to the complaint in this cause, plaintiff was hired by DMJ in January 2006 as a customer service coordinator and was subsequently promoted to a consultant position. After a white employee was named Director of the Centre in June 2007, plaintiff, who is black, complained to DMJ and to Jenny Craig that, as the employee with the most seniority and with exemplary work performance, she should have been selected as director but that she was not even given an opportunity to apply because DMJ, in direct violation of Jenny Craig corporate policy, did not post or advertise or otherwise seek applicants for the position. Plaintiff alleges that in August 2006, after it became apparent to her that defendants would not satisfactorily address her concerns, she resigned her position, following which she filed an EEOC charge complaining of race discrimination and retaliation. After receiving her notice of right to sue, plaintiff filed this action against DMJ and Jenny Craig alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 on the basis that she was not given notice of or an opportunity to apply for the director's position and was passed over in favor of a white employee with less seniority and less experience.

Jenny Craig moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, noting

that it can only be liable under Title VII or § 1981 if it was plaintiff's "employer," see 42 U.S.C. § 2000e(a)(1) (prohibiting an "employer" from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... race"), and arguing that plaintiff has failed to allege facts to establish that Jenny Craig was her "employer."  In support of the motion, Jenny Craig presented evidence which it maintains demonstrates that its franchisee, DMJ, was plaintiff's only "employer," and that consequently, Jenny Craig has no potential liability to plaintiff.

There is no dispute that DMJ was plaintiff's employer.  The question is whether Jenny Craig was also plaintiff's employer.  The Fifth Circuit has identified two approaches for use in potential multiple employer situations to determine employer status for purposes of Title VII, the "single employer" test, and the "hybrid-economic realities" test.

In Mares v. Marsh, 777 F.2d 1066 (5th Cir. 1985), the Fifth Circuit identified and examined three possible tests that courts had devised for determining if a worker employed as an independent contractor should be considered the employee of an entity for the purposes of Title VII: the agency test, which was described as turning on the employer's right to control the employee; the "economic realities" test, which was said to turn on whether the employee, as a matter of economic reality, is dependent upon the

3

business to which he renders service; and a "hybrid" economic realities/control" test (also described as a "modified agency" test), which "steers a middle ground, focusing on 'the extent of the employer's right to control the 'means and manner' of the worker's performance.'" Nowlin v. Resolution Trust Corp., 33 F.3d 498, 505 (5th Cir. 1994) (citing Mares, 777 F.2d at 1067). The Mares court expressly rejected the agency test, explaining that "[t]he strict common law 'agency' test generally has not been applied to federal social welfare and antidiscrimination legislation, since it is considered inconsistent with the remedial purposes behind such legislation." Mares, 777 F.2d at 1067 n.1; Nowlin, 33 F.3d at 506 n.5 (noting Mares' rejection of agency test). The court opted for the "hybrid economic realities/ control" test over the more expansive economic realities test.

The Fifth Circuit has since clarified that, in fact, there are two similar, but distinct tests that may be relevant in assessing "employer" status: the "hybrid-economic realities/common law control" test and the "single employer" test, first articulated by the Fifth Circuit in Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983). See Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761, 763 (5th Cir. 1997).

Regarding the hybrid test, the court has explained,

> The right to control an employee's conduct is the most important component of this test. When examining the control component, we have focused on whether the alleged employer has the right to hire and fire the

4

employee, the right to supervise the employee, and the right to set the employee's work schedule. The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

Deal v. State Farm County Mutual Ins. Co. of Texas, 5 F.3d 117, 118-19 (5th Cir. 1993) (citing Fields v. Hallsville Indep. Sch. Dist., 906 F.2d 1017, 1019 (1990), and Mares, 777 F.2d at 1068).

The single employer test was adopted in Trevino, in which the court recognized that in civil rights actions, "superficially distinct entities may be exposed to liability upon a finding they represent a single, integrated enterprise: a single employer." Trevino, 701 F.2d at 404. Under the Trevino single employer test, a four-part formula is used to determine whether a parent corporation should be considered the employer of a subsidiary's employee, e.g., Schweitzer, 104 F.3d 761, or a franchisor should be considered the employer of its franchisee's employee, e.g., Matthews v. International House of Pancakes, Inc., 597 F. Supp. 2d 663, 671 (E.D. La. 2009). This approach considers "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control," Schweitzer, 104 F.3d at 764 (citing Trevino, 701 F.2d at 404), but the focus is on the parent's or franchisor's *actual control* of the subsidiary's or franchisee's employees, id. "The second of these factors has traditionally been most important, with courts refining their analysis to the single

5

question, 'What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" Id.

In Schweitzer, the court noted the similarity in the hybrid and single-employer tests, but made clear that they are distinct tests that are applicable to distinct inquiries, and are not to be used interchangeably:

> Trevino and the hybrid test are very similar, since under the hybrid test, "the right to control an employee's conduct is the most important component...." Deal, 5 F.3d at 118. However, we hold that while the Trevino and hybrid tests are similar, and will frequently yield the same results, the tests should not be used interchangeably. Rather, the hybrid test should be used as an initial inquiry to resolve, if need be, whether a plaintiff is an employee of the defendant (or one of the defendants, in a multi defendant case) for the purposes of Title VII. If the plaintiff is found to be an employee of one of the defendants under the hybrid test, but questions remain whether a second (or additional) defendant is sufficiently connected to the employer-defendant so as to be considered a single employer, a Trevino analysis should be conducted. The Trevino analysis will establish if the second or additional defendant is also an employer of the plaintiff.

Schweitzer, 104 F.3d at 764; Nowlin, 33 F.3d at 506.

In the case at bar, there is no question but that plaintiff was an employee of DMJ, and was not, for example, and independent contractor. Thus, the Trevino analysis applies to determine whether Jenny Craig was also her employer; yet there is neither allegation nor sufficient proof to support finding Jenny Craig to be her employer under Trevino's "single employer" test.

6

In support of its motion, Jenny Craig argues that its evidence, and in particular the declaration of Dana Fiser, Vice President of Corporate Operations and Franchises xxx for Jenny Craig, conclusively establishes that there was no common ownership, management or financial control between Jenny Craig and DMJ, and that DMJ, not Jenny Craig, had the right to control and did in fact control the day-to-day activities of, and all employment decisions respecting all of the employees of DMJ's Ridgeland Centre. Indeed, in her declaration, Fiser attests that Jenny Craig and DMJ were separate entities. Jenny Craig, she states, did not share bank accounts, books, accounting records, payroll accounts, personnel records or tax identification numbers with DMJ and/or Fusco, and Jenny Craig and DMJ never shared any employees, officers, directors or space. She states, moreover, that Jenny Craig had no control over, and was not responsible for DMJ's employment practices; that Jenny Craig never had any day-to-day authority over the management or personnel at DMJ's Ridgeland store; that Jenny Craig did not employ McLaurin, who was instead employed by DMJ, which directed her daily work activities without any supervision or control by Jenny Craig; that DMJ made all decisions affecting McLaurin's employment, including all decisions concerning hiring, promotion, discipline and pay/benefits, without any consultation with Jenny Craig, as provided in the Franchise Agreement between Jenny Craig and DMJ; and that Jenny Craig did

not reserve any right to impose discipline on DMJ for any alleged failure to comply with federal employment laws.

In addition, Jenny Craig has provided the Franchise Agreement between Jenny Craig and DMJ, which explicitly states that DMJ is a completely separate entity from Jenny Craig and that "this agreement is not intended to and does not create a fiduciary relationship between them and they are not intended to be and are not and shall not be partners, joint venturers or agents of each other, and that neither party has the power to obligate or bind the other party." The Franchise Agreement further reflects DMJ's agreement "that nothing in this agreement shall be construed to authorize Franchisee to act as an agent for or with [Jenny Craig]," and that DMJ "is not and shall not be a representative or employee of [Jenny Craig]." In addition, with specific reference to employment issues, the Franchise Manual provided by Jenny Craig to DMJ states:

> Because Franchise Centre staffs are employed by a separate Franchise company, all personnel/employment issues are managed at the local level with your Franchisee. The Corporate Human Resources Department does not hire employees for franchisees, not does HR provide legal advice or services.
>
> The HR Department does provide Franchisees or Franchise Center with support by sharing various templates for forms, job descriptions, etc. These may include items such as sample interview tools, sample job descriptions, sample evaluation tools, and access to the corporate recruiting tool, Monster.com.

In response to Jenny Craig's motion, the only alleged facts cited by plaintiff as support for her contention that Jenny Craig was her employer are these: during the hiring process, DMJ offered her "the opportunity to participate in training offered by the Jenny Craig Corporate Office"; the application for employment she completed was on a Jenny Craig form; when she was hired, DMJ provided her a copy of Jenny Craig's Corporate Employment Manual and Policies; Jenny Craig imposed extensive employment standards and guidelines on DMJ, on which she relied in attempting to resolve her discrimination claim; and Jenny Craig reserved the right to conduct investigations and enforce disciplinary measures for noncompliance with the Franchise Agreement.

Plaintiff has offered no evidence that Jenny Craig imposed any employment standards or guidelines on DMJ, and the suggestion that this occurred would seem belied by the provision in the Franchise Manual that Jenny Craig does not hire employees for the franchise and that "all personnel/employment issues are managed at the local level" by the franchisee. Moreover the fact that DMJ may have used a Jenny Craig employment application or may have provided McLaurin with a copy of Jenny Craig's Corporate Employment Manual does not tend to establish either a right of control on the part of Jenny Craig, or of actual control, particularly where the evidence otherwise tends to show that Jenny Craig provided these materials to DMJ merely to be used as

9

"templates" and did not authorize their use other than as "templates." Finally, plaintiff has offered no evidence whatsoever that Jenny Craig had any involvement in the challenged employment decision. The evidence, in fact, is to the contrary, and establishes beyond dispute that the decision was made solely by DMJ, and that Jenny Craig refused to become involved when plaintiff undertook to challenge DMJ's decision for the very reason that it had no control over DMJ's employment decisions.

In many respects, plaintiff's position resembles that of the plaintiffs in <u>Tipton v. Northrup Grumman Corp.</u>, 242 Fed. Appx. 187, 190, 2007 WL 2188190, 2 (5th Cir. 2007), in which the court, applying the <u>Trevino</u> analysis, affirmed summary judgment for the alleged employer. In <u>Tipton</u>, the putative "employer," Northrup Grumman Corp. (NGC), presented evidence in the form of a declaration from Kristen Barney, Northrup Grumman Ship Services' (NCSS) human resources director, in which she stated there was no interrelation of operations, centralized control of labor or employment decisions, common management, or common ownership or financial control between NGSS, the plaintiffs' undisputed employer, and NGC. This declaration "thus indicate[d] that NGSS and NGC were not a single employer with respect to Plaintiffs." <u>Id</u>. The district court concluded, and the Fifth Circuit affirmed, that plaintiffs did not satisfy their burden of coming forth with "specific facts" that would establish a genuine issue of fact

10

regarding whether NGC was their employer where plaintiffs simply contended that they had been led to believe from certain oral and written statements from NGC and NGSS that their employment "extend[ed] through NGSS to NGC." Id.

> As examples of such statements, Plaintiffs claimed that "[Plaintiff Tipton] ha[s] received documents with both NGC and NGSS or no defining difference" and that Barney informed Tipton that "she was directed to investigate [Tipton's] concerns" by personnel at NGC's Los Angeles headquarters. In further support of their memorandum, Plaintiffs submitted certain press releases and employee newsletters from NGC, news articles about NGC, printouts from NGC's corporate website, and copies of correspondence to and about Tipton by NGC attorneys regarding complaints he had made.

Id. 242 Fed. Appx. at 190, 2007 WL 2188190, at 2. The Fifth Circuit concluded,

> Plaintiffs' evidence in no way refutes the relevant portions of the Barney Declaration, nor does it establish that there are genuine issues of fact regarding whether NGSS and NGC had interrelated operations, centralized control of labor or employment decisions, common management, or common ownership or financial control. Plaintiffs' evidence certainly does not establish that there is a genuine issue of fact regarding the crucial question of whether NGC was the final decision-maker in connection with the employment matters about which Plaintiffs complain.

Id. Like the plaintiffs in Trevino, McLaurin's position herein is that she was led to believe, based on DMJ's use of certain Jenny Craig documents, that her employment "extended through" DMJ to Jenny Craig. However, as in Trevino, summary judgment is proper for Jenny Craig in the absence of any evidence to refute Jenny Craig's proof that there was no interrelation of operations,

11

centralized control of labor or employment decisions, common management, or common ownership or financial control between DMJ and Jenny Craig, and the further absence of evidence that Jenny Craig had any control over the challenged employment decision.

Accordingly, based on the foregoing, it is ordered that Jenny Craig's motion for summary judgment is granted.

SO ORDERED this 1st day of June, 2009.

                                                 /s/ Tom S. Lee
                                                UNITED STATES DISTRICT JUDGE